## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**TERESA MILLER,**

       **Plaintiff,**

**v.**                         **Case No. 3:16-cv-04225**

**WEST VIRGINIA DIVISION
OF CORRECTIONS, et al.,**

       **Defendants.**

### <u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>

On May 5, 2016, Plaintiff, Teresa Miller, proceeding *pro se* and then incarcerated at the Lakin Correctional Center ("Lakin") in West Columbia, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of West Virginia. (ECF No. 1). The action was subsequently transferred to this court and is assigned to the Honorable Robert C. Chambers, United States District Judge. By standing order, the matter was referred the undersigned United States Magistrate Judge for findings of fact and recommendations for disposition. Having fully considered Plaintiff's claims and her requests for relief, the undersigned **FINDS** that portions of the amended complaint are moot, portions request compensation from individuals and entities that are not "persons" under § 1983, and the remaining portions fail to state a claim for which relief may be granted. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding district judge **DISMISS** the amended complaint, with prejudice, and remove this action from the docket of the court. For the

1

same reasons, the undersigned further **RECOMMENDS** that the presiding district judge **DENY** Plaintiff's motion to amend the amended complaint, which seeks to increase her prayer for monetary relief to one billion dollars. (ECF No. 34).

## I.    Relevant Factual Background

On November 14, 2013, Plaintiff entered a guilty plea to a drug trafficking charge brought in the Circuit Court of Monongalia County, West Virginia.[1] On January 6, 2014, Plaintiff was sentenced to a term of 1 to 15 years, to be served in the West Virginia State Penitentiary. However, in lieu of incarceration in the penitentiary, the Circuit Court allowed Plaintiff to serve her sentence on home confinement with the condition that she report to a probation officer as directed. Plaintiff did not appeal her conviction or sentence.

On February 25, 2014, Plaintiff's home confinement was revoked when she tested positive for cocaine, and she was delivered to the West Virginia Division of Corrections. Plaintiff moved for reconsideration of the revocation order, and on June 9, 2014, the Circuit Court agreed to place her on home confinement again, contingent on the Preston County home confinement office accepting her, as well as her enrollment in either drug court or an in-patient treatment program. Arrangements for home confinement were not completed; therefore, Plaintiff was not released pursuant to this order and, instead, was taken to Lakin.

On March 9, 2015, a hearing was held on a second motion for reconsideration. The Circuit Court agreed to place Plaintiff on six months of probation. Consequently, she was

---

[1] The factual background is taken in large part from *Miller v. State of West Virginia*, No. 2:16CV7, 2016 WL 3782085 (N.D. W. Va. June 21, 2016), *report and recommendation adopted,* No. 2:16-CV-7, 2016 WL 3824858 (N.D. W. Va. July 12, 2016), *appeal dismissed,* No. 16-6995, 2016 WL 6871946 (4th Cir. Nov. 22, 2016).

immediately released from Lakin.

While on release, Plaintiff allegedly violated the terms of probation and was arrested on July 20, 2015. Following a hearing, the Circuit Court reimposed Plaintiff's original sentence. She was remanded to the Division of Corrections and returned to Lakin. Plaintiff filed a motion for reconsideration of the revocation order; however, the Circuit Court denied the motion based upon the number of Plaintiff's probation violations and the fact that she was under consideration for parole. Plaintiff appealed the Circuit Court's order to the Supreme Court of Appeals of West Virginia ("WVSC"), and that appeal is still pending. Sometime between August 3 and August 12, 2016, Plaintiff was released from Lakin. (ECF Nos. 30, 31). She currently resides in Morgantown. (ECF No. 33).

## II.  <u>**Procedural Background of § 1983 Action**</u>

On May 5, 2016, Plaintiff filed a lengthy, rambling complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Northern District of West Virginia. (ECF No. 1). The complaint included numerous criticisms levied against multiple individuals and institutions that Plaintiff had encountered during her journey through the state penal system. Altogether, counting continuations and attachments, the complaint was 187 pages long. (ECF Nos. 1, 1-1, 1-2, 1-3, 1-4). On May 5, 2016, the Clerk of Court sent Plaintiff a Notice of Deficient Pleading, indicating that Plaintiff needed to provide complete names, to the extent known, and addresses of the defendants in order for the action to proceed. Plaintiff was given twenty-one days to comply. (ECF No. 5). However, the following day, United States Magistrate Judge Robert W. Trumble, noting that the claims involved facilities and individuals located in the Southern District of West Virginia, transferred Plaintiff's case to this court. (ECF No. 6).

On June 23, 2016, the undersigned issued an order denying seven pending motions

filed by Plaintiff and identifying several deficiencies in the complaint and the *in forma pauperis* application. (ECF No. 22). Plaintiff was instructed to submit a completed Application to Proceed Without Prepayment of Fees & Costs and to file an amended complaint setting forth concise claims against the named defendants. (*Id.*). Plaintiff was further advised that some of her claims—those that challenged the fact or duration of her confinement—were not properly brought in a § 1983 complaint and needed to be asserted in a petition for a writ of habeas corpus. Plaintiff was given sixty days to comply with the order.

On July 20, 2016, Plaintiff filed an amended complaint and an Application to Proceed Without Prepayment of Fees and Costs. (ECF Nos. 27, 28). On August 12, 2016, Plaintiff sent the Clerk of Court a Notice of Change of Address form, indicating that she was no longer housed at Lakin and was now residing in Kingwood, West Virginia. (ECF No. 31). On September 29, 2016, Plaintiff filed a second notice of change of address, indicating that she had moved to Morgantown, West Virginia. (ECF No. 33). Plaintiff no longer appears in the inmate locator of either the West Virginia Division of Corrections, or the West Virginia Regional Jail and Correctional Facility Authority. Her most recent filing indicates that she remains on release in Morgantown. (ECF No. 34 at 3).

## III.  <u>Amended Complaint</u>

In the amended complaint, Plaintiff names twenty (22) defendants, including the West Virginia Division of Corrections, Commissioner Jim Rubenstein, individuals employed at Lakin, individuals connected with the Charleston Correctional Center, and individuals associated with PSI Med, an entity that allegedly provided remote medical services to Plaintiff. (ECF No. 27). Plaintiff lists a number of grievances against the defendants, including lack of access to the law library; refusal to add courts to Plaintiff's

4

call list; alleged retaliation for filing civil cases; loss of personal belongings during transport; problems with work release; violations of the Health Insurance Portability and Accountability Act ("HIPAA"); ineffective grievance procedure; the suspicious application of clear tape to her mail; letters not being delivered; religious discrimination; delays in granting her parole; refusal of daily access to the reading library; and suspected tampering with her kosher food. (*Id.*). With respect to relief, Plaintiff asks the Court to explain why she was brought to prison without a sentencing order; why she is unable to use the law library and have cases dismissed for lack of using it; why she does not have access to programs designed to help her integrate into society; why she is punished for filing legal papers; why the defendants are "trying to distance me between my friends and family"; and for any monetary relief owed to her for the alleged violations of her constitutional and civil rights. (ECF No. 27 at 6, 15). A short time ago, Plaintiff moved for leave to increase her demand for monetary relief to one billion dollars. (ECF No. 34).

## IV.    Screening Standard

Pursuant to the provisions of 28 U.S.C. § 1915, a court must screen each case in which a prisoner seeks to proceed *in forma pauperis*. The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant "who is immune from such relief." 28 U.S.C. § 1915. A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *Denton v. Hernandez,* 504 U.S. 25 (1992). Likewise, a complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the

plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

The Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009), stating that the Court is required to accept as true the factual allegations asserted in the complaint, but is not required to accept the legitimacy of legal conclusions that are "couched as . . . factual allegation[s]." *Id.* at 678 (quoting *Bell Atlantic* Corp, 550 U.S. at 554). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

Plaintiff has filed her complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for her, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## V.    **Discussion**

### *A. Mootness*

In the course of screening a prisoner's case, the court should also verify that it has judicial authority under Article III, Section 2 of the United States Constitution to consider

the asserted claims. As a prerequisite to the exercise of judicial authority, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed,* 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse,* 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). "Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

Nevertheless, a plaintiff's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading

review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515 (1911). Under this exception, a claim that would otherwise be moot may be subject to judicial review if the facts of the case lead to a reasonable expectation that the "same complaining party would be subjected to the same action again." *Lane v. Williams,* 455 U.S. 624, 634 (1982) (citing *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975)); *Federal Election Commission v. Wis. Right to Life*, 551 U.S. 449, 463 (2007) ("capable of repetition" exception requires demonstrated probability that the same controversy will recur involving the same plaintiff). The plaintiff must make a reasonable showing "that he will again be subject to the alleged illegality." Mere conjecture that the plaintiff may return to a prison facility and again face the alleged wrong is not sufficient to meet the mootness exception. *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir. 1996).

Here, Plaintiff 's complaint is so unwieldy that it is difficult to separate her claims and requests for relief and assign them to the various defendants. However, to the extent that Plaintiff requests declaratory or injunctive relief, the undersigned **FINDS** that her complaint is moot. Plaintiff is no longer an inmate at Lakin, having been released from custody months ago. Moreover, Plaintiff has not made a reasonable showing that she will return to Lakin and be subjected to the same alleged wrongs. Therefore, all claims seeking non-monetary relief should be dismissed.

### B.  Claims Subject to Money Damages

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id.* Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their

authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658. In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person (the defendant) deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of State law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, * 4 (D.S.C. 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Id.* at 50.

Plaintiff asks the Court to award her the "monetary" relief that she is "entitled to for violating [her] constitutional and civil rights." (ECF No. 27). Plaintiff does not identify which of the twenty-two defendants are responsible for paying the money damages, nor does she specify an amount of compensation that should be awarded against each defendant. Furthermore, Plaintiff fails to pinpoint the particular violations that she believes entitle her to monetary relief. For that reason, the undersigned will examine in turn each claim asserted by Plaintiff in her amended complaint to determine if she has alleged sufficient facts to state a plausible claim for money damages under § 1983.

### 1. Individuals and Entities that are not Persons under § 1983

Before examining Plaintiff's individual claims, the undersigned will consider whether there are any named defendants not subject to suit, because they are not "persons" under § 1983. In *Will v. Mich. Dept. of State Police,* the Supreme Court of the United States considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of Rev.Stat. § 1979,

42 U.S.C. § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The Court further held that a State's officials "acting in their official capacities" likewise were not "persons" under § 1983. *Id.* at 71. The Court explained: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* (citations omitted).

The Court later clarified its holding in *Will,* making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity contained in the Eleventh Amendment to the United States Constitution bars suit against a State. *Will,* 491 U.S. at 67. By extension, sovereign immunity bars claims for money damages against state officials acting within their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, suits for money damages brought

10

against state officials acting in their personal capacities are not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. 30. Instead, a state official sued in his or her personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or individual capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed.App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Here, Plaintiff does not specify whether she intends to sue the defendants in their individual or personal capacities. Consequently, the undersigned must review the complaint and make a fair determination. To begin, Plaintiff names two state agencies, the West Virginia Division of Corrections and the Charleston Correctional Center, as defendants. It is well-established that the West Virginia Division of Corrections is an "arm of the State" of West Virginia and is not a "person" under § 1983 for purposes of actions seeking money damages. *See, e.g., Mitchell v. Janice,* Civil Action No. 1:07-0625, 2009 WL 4666010, *1, n. 3 (S.D. W. Va.2009) ("[T]he West Virginia Department of Corrections is not a "person" as required by Section 1983); *Berry v. Rubenstein,* No. 01:07–cv–535, 2008 WL 1899907, at *2 (S.D. W. Va. April 25, 2008) (same); *Rakes v. Rush*, No. CIV.A. 2:09-018, 2009 WL 2392097, at *7 (S.D. W. Va. Aug. 4, 2009). Likewise, the Charleston Correctional Center is nothing more than a facility operated and controlled by the Division of Corrections. As such, the correctional center is subsumed by the Division of Corrections and, hence, is not a "person" under § 1983. *Meadows v. Huttonsville Corr. Ctr.*, 793 F.Supp. 684, 686 (N.D.W. Va. 1992), *aff'd,* 991 F.2d 790 (4th Cir. 1993) (finding that correctional center was "part of the West Virginia prison system" and therefore was not subject to suit under § 1983). Accordingly, the undersigned **FINDS** that the West Virginia Division of Corrections and the Charleston Correctional Center are not "persons" under § 1983 and should be dismissed from this action.

Next, Plaintiff names several individual defendants, who are identified in the caption of the complaint by their official positions. An examination of the complaint reflects an absence of allegations detailing the causes of action against these State officials. While Plaintiff does not claim that these individuals have been joined in the suit because of their positions with the State, she also makes no allegations of independent

liability on their part, nor does she expressly request monetary damages from them. Given the lack of factual allegations connecting these defendants to the alleged constitutional violations, the undersigned **FINDS** that they are named in the complaint in their official capacities and, thus, should be dismissed as they are not "persons" liable for money damages under § 1983. The defendants who are named only in their official capacities include Commissioner Jim Rubenstein, Warden Laura Nohe, Warden Ann Thomas, and Warden Jeff Stinnett. As for the remaining sixteen defendants, the undersigned will review Plaintiff's allegations and determine whether she states a claim for monetary relief under § 1983 against any of them.[2]

### 2. <u>Lack of Sentencing Order</u>

Plaintiff alleges that on July 23, 2014, she was brought to Lakin without a sentencing order, but with an amended home confinement order issued by the Circuit Court of Monongalia County. (ECF No. 27 at 5). She apparently questioned the order and showed it to two defendants, Mrs. Rollins and Mrs. Long, who were counselors at Lakin. Plaintiff got "no help from them." (*Id.*). Plaintiff also claims that she showed the order to the West Virginia Parole Board and was told that she had already been released and was supposed to enroll in drug court or rehabilitation. (*Id.*). However, Plaintiff claims that she was never released.

Plaintiff clearly fails to state a viable claim against the two identified defendants based upon these sparse allegations. Plaintiff does not explain what constitutional right the two defendants allegedly violated, nor does she clarify precisely what injury she

---

[2] The undersigned notes that the complaint is convoluted and the supporting documentation is lengthy and disjointed, making review a laborious and difficult process. Nevertheless, after examining Plaintiff's filings multiple times, the undersigned is unable to find any mention in the allegations of the following four named defendants: Mrs. Smith, Mrs. Henderson, Aue Roush, and Ms. Baine.

13

suffered as a result of their purported violations. If Plaintiff intends to make a claim for wrongful imprisonment, she has failed to demonstrate any connection between the two named defendants and her incarceration at Lakin. Indeed, it appears from the history that the Circuit Court made Plaintiff's release from custody contingent upon her acceptance by the Preston County home confinement office, and that acceptance was never confirmed. Plaintiff fails to demonstrate how Mrs. Rollins or Mrs. Long had any control over the Preston County home confinement office or the Circuit Court of Monongalia County. Therefore, the undersigned **FINDS** that Plaintiff fails to state a §1983 claim against the named defendants based upon the stated allegations.

### 3.  <u>Law Library and Access to Courts</u>

Plaintiff complains that she was denied daily access to the law library by defendant, Mrs. Birdsong, until April 18, 2016 despite having "cases filed in the State Supreme Court and District Court." (ECF No. 27 at 6). Plaintiff further claims that a case pending in the WVSC, No. 16-0034, was ultimately dismissed for failure to follow appellate procedure, although she does not provide any additional details. According to the Report and Recommendation ("R&R") issued in *Miller*, 2016 WL 3782085, at *2, Plaintiff did not file a direct appeal or state habeas petition, but did file an appeal of the Circuit Court's refusal to reconsider its revocation order. According to the court in *Miller,* the Circuit Court was directed to appoint counsel to assist Plaintiff with that appeal, and the appeal was still pending at the time the R&R was issued.

In addition to her dissatisfaction with access to Lakin's law library, Plaintiff complains about other issues related to court access. First, she asserts that Mr. Searls and Mrs. Cauldwell, unit personnel, told her that they were allowed up to fourteen days to notarize her documents. Plaintiff maintains that this time allowance is unacceptably long.

Second, she was unable to add court numbers to her calling list, and her requests for addresses were denied. Third, Plaintiff objected to having to save her computer work on the hard drive of the library computer or copy it to a memory stick. She argues that when she left her documents on the computer, they were easily accessed by anyone using the computer. Plaintiff contends that Lakin should supply inmates with a rewritable disk that they can take from the library when they finish working on the computer. Plaintiff additionally complains that she was forced to rely on other inmates for legal advice, rather than being provided the assistance of a law clerk or law student, and when she did receive assistance, it was incorrect. Finally, Plaintiff complains vigorously about her struggles to obtain adequate copies of her legal work necessary to satisfy the courts.

In *Bounds v. Smith*, 430 U.S. 817, 821 (1977), the United States Supreme Court held that prisoners have a constitutional right to meaningfully and effectively access the courts. To satisfy that right, States have an obligation to provide adequate law libraries, or assistance from individuals trained in the law. *Id.* at 828. However, the obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey,* 518 U.S. 343, 355 (1996). In *Lewis*, the Court made clear that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see, also, Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D. W. Va. Mar. 20, 2008) ("[P]risoners do not have a right per se to a law library or legal assistance."). Instead, according to the *Lewis* Court, *Bounds* merely reaffirmed a prisoner's right to meaningfully access the courts. *Lewis*, 518 U.S. at 351. The Court explained that in order for a prisoner to bring a plausible claim that access to the courts was obstructed by inadequate legal assistance,

the prisoner must demonstrate actual injury or "that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* The Court provided some examples of a plausible claim: "[A prisoner] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* The Court added that "[t]he tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.

Here, Plaintiff asserts that her action in the WVSC was dismissed for a procedural flaw. However, she has not alleged with any specificity how the dismissal was caused by lack of daily access to the law library, by being denied immediate notary services, by being refused addresses and telephone numbers, by having to cope with inadequate copies, by the lack of law students and law clerks to assist her, or by not being given a rewritable disk on which to copy her work. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (recognizing that plaintiff bringing denial of access to courts claim must allege claim with specificity and identify an actual injury resulting from official conduct); *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (rejecting denial of access claim where complaint did "not specifically explain how [plaintiff] was injured by any limitations on his access to the law library."). Conclusory allegations are insufficient to maintain a claim based on the lack of access to courts.

Notably, other federal courts have squarely rejected claims similar to those raised in Plaintiff's complaint. For example, at least two federal district courts within the Fourth

Circuit have rejected arguments that the right to access the courts is violated by limiting an inmate to one hour of law library time every week or every other week, where no actual harm from the time limitation is shown. *See Watts v. Johnson*, No. 7:07-cv-00323, 2007 WL 2110341, at \*1-\*2 (W.D. Va. July 18, 2007); *Sterling-Earl v. Gray*, No. 7:06CV00196, 2006 WL 1318367, at \*5-\*6 (W.D. Va. May 15, 2006); *Skundor v. Painter*, No. 5:00-0463, 2002 WL 32334397, at \*4-\*6 (S.D. W. Va. Sept. 26, 2002); *see also Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000) ("In order for an inmate to show that the library or legal assistance program hindered his efforts to pursue a civil legal claim, he must show that he encountered more than mere delay or inconvenience."). In addition, courts have dismissed claims based on the lack of ancillary tools—such as notary services and copies— when no actual injury is shown. *See Tyler v. Byrd*, No. CV 4:16-0400-MGL-BM, 2017 WL 875859, at \*3 (D.S.C. Feb. 14, 2017), *report and recommendation adopted,* No. CV 4:16-00400-MGL, 2017 WL 839535 (D.S.C. Mar. 3, 2017) (holding that lack of notary services, copies, and assistance with legal mailings are not actionable without an injury); *Deans v. Lindsey*, No. C/A 3:073247-CMC-JRM, 2009 WL 436403, at \*3 (D.S.C. Feb. 20, 2009) (same); *and Crouchman v. Pickens Cty. Council*, No. CV 9:16-0804-CMC-BM, 2017 WL 767185, at \*14 (D.S.C. Feb. 3, 2017), *report and recommendation adopted,* No. CV 9:16-804-CMC-BM, 2017 WL 749393 (D.S.C. Feb. 27, 2017) (dismissing a plaintiff's denial of access to the courts claim when he failed to show an actual injury).

Clearly, Plaintiff received ancillary services and tools while at Lakin. Notary services were never denied to Plaintiff; rather, she just had to wait longer than she wanted to wait. However, Plaintiff never alleged a harm associated with the delay of notary services. Similarly, by allowing Plaintiff to use a memory stick, Lakin provided the same opportunity for document privacy as would have been available through the use of a

17

rewritable disk. Plaintiff provides no explanation as to how a rewritable disk would have improved her access to the courts, nor does she articulate any injury related to the absence of a rewritable disk. Lastly, Plaintiff was repeatedly given assistance with copying. The instant action is proof of that fact. According to Plaintiff's own statements, the reservations expressed by the library staff at Lakin were related to Plaintiff's demands for copious copies, not her requests for assistance with reasonable copies. Although Plaintiff grouses about the librarian's refusal to make unlimited copies at Plaintiff's request, she provides no basis upon which to conclude that a lack of copies significantly hindered or prevented her pursuit of a claim.

The documentation supplied by Plaintiff indicates that she filed an action in the WVSC, which was assigned the case number 16-0034. This action was a *pro se* petition for a writ of habeas corpus filed under the original jurisdiction of the WVSC. (ECF No. 1-3 at 20). The WVSC dismissed the case, without prejudice, on March 15, 2016, because Plaintiff failed to file an appendix. (*Id.* at 17-20). In the dismissal order, the WVSC explained that it was denying Plaintiff's motion for an extension of time to file the appendix, because Plaintiff had counsel appointed to represent her in post-conviction habeas proceedings. (*Id.* at 17). As the Order demonstrates, dismissal of case no. 16-0034 was not a final adjudication of Plaintiff's right to lodge a post-conviction collateral attack. Instead, it was a gentle reminder to Plaintiff that she should allow her appointed counsel to do his job.

Although Plaintiff complains that her *pro se* case was dismissed, she can show no actual injury from the dismissal. Plaintiff was represented by counsel on the very issues she attempted to present *pro se* to the WVSC, and that counsel was not precluded in any manner from pursuing post-conviction relief on Plaintiff's behalf. These facts seriously

belie any claim by Plaintiff that she was prevented from meaningfully accessing the courts to appeal the Circuit Court's revocation order. *Smith v. Bounds*, 813 F.2d 1299, 1302 (4th Cir. 1987) ("*Bounds* held that either remedy, law libraries or attorney assistance, could fulfill the constitutional requirement of access."); *Horton v. Berkebile*, No. 5:10-0290, 2012 WL 5825691, at *7 n.5 (S.D. W. Va. Oct. 26, 2012) (stating "[i]t is well established that the representation by counsel negates a prisoner's claim of inadequate access to the courts."), *report and recommendation adopted by* 2012 WL 5621240 (S.D. W. Va. Nov. 15, 2012); *Benjamin*, 102 F. Supp. 2d at 164 ("[T]he right of access to courts is not infringed where prisoners are not supplied with an adequate prison library, so long as they were provided with appointed counsel."); *cf. Clenney v. Coffey*, No. PJM-10-1314, 2010 WL 2730628, at *2 (D. Md. July 9, 2010) (recognizing that jail official was "not required to accommodate [prisoner plaintiff's] desire to supplement the services of the public defender's office with research."). Even if Plaintiff had declined her appointed counsel, a right to access the law library would not "spring up" as a result of that choice. *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000); *see also United States v. Chatman*, 584 F.2d 1358, 1360 (4th Cir. 1978).

In addition to the habeas petition, Plaintiff filed a separate action in the WVSC, seeking an appeal of the Circuit Court's order revoking parole and reinstating her sentence of imprisonment. That appeal, having case no. 16-0235, remains pending in the WVSC. According to the WVSC's docket, on March 3, 2017, the Court appointed replacement counsel to represent Plaintiff on that appeal. *See State of West Virginia v. Miller,* No. 16-0235 (W. Va.). Thus, Plaintiff has suffered no injury in relation to this action.

With respect to Plaintiff's federal habeas corpus proceeding, on June 21, 2016,

United States Magistrate Judge Trumble recommended that the petition for a writ of habeas corpus be denied, because Plaintiff had failed to exhaust her state court remedies. Judge Trumble pointed out that Plaintiff had a pending appeal of the parole revocation order and had never filed a state habeas proceeding. He noted that a federal action was "not a substitute for pursuing state judicial remedies," and concluded that it was "inappropriate for this Court to entertain [Plaintiff's] federal habeas petition" until she had exhausted her state court remedies. *Miller,* 2016 WL 3782085, at \*3-4. The presiding district judge adopted Judge Trumble's recommendations and dismissed Plaintiff's federal habeas proceeding on July 12, 2016, pending exhaustion of state judicial remedies. Consequently, her federal action was dismissed on a substantive ground that no additional time in the law library, or additional ancillary tools would have altered.

In sum, Plaintiff has neither alleged nor shown an actionable injury that can be traced to any of the purported deficiencies with Lakin's law library or legal assistance programs. Rather, Plaintiff brings her claim under the apparent misconception that she has a "freestanding right" to a law library, legal services, and limitless ancillary tools. *Lewis*, 518 U.S. at 351. Such a contention was rejected in *Lewis*, and it must be here, as well. Therefore, the undersigned **FINDS** that Plaintiff fails to state a plausible claim of denial of access to the courts.

### 4. <u>Denial of Access to Programs</u>

Plaintiff asserts that she signed up for various classes offered at Lakin, including cosmetology, culinary arts, accounting, and nutrition, but she was "wait listed" for months. (ECF No. 27 at 7-8). She also claims that she was not permitted daily visits to the reading library to peruse newspapers and magazines, and browse the books. (*Id.* at 13). Plaintiff suggests that Lakin's failure to provide these services left her ill-prepared to re-

enter society upon her discharge from custody.[3]

The Eighth Amendment to the United States Constitution prohibits the "cruel and unusual" punishment of inmates. *Farmer v. Brennan,* 511 U.S. 825,832 (1994). "This prohibition is applied to the states through the Due Process Clause of the Fourteenth Amendment." *May v. Rubenstein*, No. CIV.A.1:07CV116, 2008 WL 170594, at *3 (N.D. W. Va. Jan. 17, 2008) (citing *Wilson v. Seiter,* 501 U.S. 294 (1991)). "In order to comply with the Eighth Amendment, prison conditions must comport with 'the evolving standards of decency that mark the progress of a maturing society.'" *Id.* at *5 (quoting *Estelle v. Gamble,* 429 U.S. 97, 102 (1976)).

To state a plausible claim related to the denial of educational offerings, Plaintiff must show both (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind" (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Wilson*, 501 U.S. 294, 298–300 (1991)); *see, also, Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir. 1991) ("a two-pronged showing is necessary to demonstrate a ... violation with respect to prison conditions: (1) a serious deprivation of a basic human need and (2) deliberate indifference to prison conditions on the part of prison officials.).

The first prong, or the objective component, of an Eighth Amendment claim is satisfied by a showing that the challenged conditions caused or constituted an extreme deprivation of a basic human need. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.

---

[3] The record is inconsistent regarding Plaintiff's ability to visit the reading library. She claims that she was prevented from making daily visits; however, at other points in her supplementary documentation, Plaintiff states that she was only allowed to visit the reading library once per day. (ECF No. 1-1 at 7, 27).

2003). "[T]o demonstrate such an extreme deprivation, [Plaintiff] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [her] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (*quoting De'Lonta*, 330 F.3d at 634); *see also Strickler v. Waters,* 989 F.2d 1375, 1380 (4th Cir. 1993) ("[F]or prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition."). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler,* 989 F.2d at 1379–80).

With respect to the second prong, or the subjective component, a plaintiff must demonstrate a "deliberate indifference" to his health or safety by the defendant. *Farmer*, 511 U.S. at 834 (quoting *Wilson,* 501 U.S. at 297). The Supreme Court has explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Deliberate indifference is more than mere negligence but less than malice. *Estelle,* 429 U.S. at 105-06 (1976). Put simply, if the defendants in this case were aware of an excessive risk of harm to Plaintiff's health or safety and disregarded it, the defendants had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 303; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010).

Regarding Plaintiff's claims about programs and educational opportunities, she is hard-pressed to demonstrate that being "wait listed" for any such program amounts to a deprivation of constitutional magnitude. As such, Plaintiff cannot satisfy the first prong of the Eighth Amendment analysis. *See Gholson v. Murry*, 953 F. Supp. 709, 719 (E.D. Va. 1997) ("[O]utside of prison, there is no guarantee of employment nor a right to certain types of education, such as college, free-of-charge. Thus, it is unlikely that contemporary society would find the deprivation to … inmates of work opportunities and certain types of education to be cruel and unusual punishment."); *Pruitt v. Rockingham Harrisonburg Reg'l Jail*, No. CIV.A. 705CV00560, 2006 WL 13099, at *3 (W.D. Va. Jan. 3, 2006) ("The Eighth Amendment does not guarantee an inmate the right to educational opportunities.") (citing *Rhodes v. Chapman,* 452 U.S. 337, 347-48 (1981)); *Rhodes,* 452 U.S. at 347 (holding that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation); *Eakle v. Ballard*, No. 2:12-CV-00590, 2012 WL 1660830, at *3 (S.D.W. Va. Mar. 13, 2012), *report and recommendation adopted,* No. CIV.A. 2:12-0590, 2012 WL 1660821 (S.D.W. Va. May 11, 2012) ("[A]s a number of federal courts have found, there is no specific federally protected right to participate in rehabilitation, educational or vocational programs.")[4]

Assuming Plaintiff could demonstrate that the lack of available programs constituted the deprivation of a life necessity, she still would fail to satisfy the subjective prong of the analysis. Plaintiff has not alleged that any particular individual at Lakin

---

[4] Plaintiff does not include any factual allegations in the complaint that would trigger a due process analysis. However, even if a sufficient factual basis existed to consider such a claim, Plaintiff would struggle, no doubt unsuccessfully, to show that being wait listed for programs imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." *See Sandin v. Conner,* 515 U.S. 472, 484-86 (1995).

placed her on a wait-list, although classes were available, or otherwise intentionally impeded her access to educational opportunities. Plaintiff has not provided a factual basis to demonstrate that any of the defendants acted deliberately to deprive her of access to inmate programs, knowing that to do so would cause her significant physical or psychological harm or place her at excessive risk of such harm. Thus, Plaintiff is also unable to establish the second component of an Eighth Amendment claim. Accordingly, the undersigned **FINDS** that Plaintiff fails to state a *prima facie* case related to Lakin's programs and educational offerings.

### 5. <u>Retaliation for Filing Suit</u>

Next, Plaintiff claims that she was incarcerated in retaliation for filing civil suits against the correctional facility. (ECF No. 27 at 8). According to Plaintiff, she was transferred to the Huntington Work Release program only to be sent back to prison after receiving paperwork from the District Court. (ECF No. 1-1 at 11). To support her claim of retaliation, Plaintiff states that, in connection with her return to Lakin, she was required to attend an administrative meeting with an unnamed prison official. The official told her she was being transferred back to the facility due to her psychological issues, but he then proceeded to focus the conversation almost exclusively on Plaintiff's various lawsuits. (*Id.*).

"It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts." *Ebersole v. Conover*, No. 7:08CV00503, 2010 WL 3629581, at *10 (W.D. Va. Aug. 27, 2010), *report and recommendation adopted,* No. 7:08CV00503, 2010 WL 3585833 (W.D. Va. Sept. 13, 2010) (citing *Am. Civil Liberties Union v. Wicomico Cnty,* 999 F.2d 780, 785 (4th Cir. 1993)). However, "bare assertions of retaliation do not establish a claim of constitutional

dimension." *Boblett v. Angelone*, 942 F. Supp. 251, 254 (W.D. Va. 1996), *aff'd,* 121 F.3d 697 (4th Cir. 1997) (citing *Adams v. Rice,* 40 F.3d 72 (4th Cir.1994)). Generally in this circuit, inmates' claims of retaliation are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74 (4th Cir. 1994)). Therefore, to state a *prima facie* case of retaliation, Plaintiff must present concrete facts corroborating the claim. Here, Plaintiff offers *no facts* to support her allegation of retaliation, nor does she identify a particular person or persons who purportedly ordered her return to Lakin for retaliatory reasons.

Both statutory and common law provide prison officials with broad discretion over an inmate's ""location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges" *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir. 1991); *see, also,* W. Va. Code § 25-1-1, *et seq.* A change in the location or condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a constitutional claim only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 484 (1995); *also Slezak v. Evatt,* 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (citation omitted). "Placement in a prison, as opposed to a work release program, is not "atypical" or a "hardship" within the context of prisoner life. *Kitchen v. Upshaw,* 286 F.3d 179, 186–187 (4th Cir. 2002). Plaintiff simply had no constitutional right to participate in a work release program, *Gaston,* 946 F.3d at

344, and she has failed to state a plausible claim that her return to Lakin from the Huntington Work Release program was motivated by retaliation, or any other unconstitutional reason. Therefore, the undersigned **FINDS** that Plaintiff fails to state a plausible claim of retaliation.

### 6. <u>Denial of Parole</u>

Plaintiff also complains that she was denied parole in April 2016, and she wants to know why parole was refused when her record was positive. (ECF No. 27 at 9). Plaintiff seemingly answers her own question thereafter by claiming that Lakin provided the Parole Board with incorrect information. In particular, Plaintiff asserts that the records given to the Parole Board indicated that Plaintiff had not finished her classes. However, she claims to have completed them in December 2015. Plaintiff alleges that the Parole Board used the erroneous information regarding her unfinished classes as a reason to deny her parole.

The undersigned notes that a summary of the Parole Board's decision was provided by Plaintiff and made part of the record. (ECF No. 1-4 at 19-20). According to the summary, Plaintiff's parole was denied in April 2016, because the Board did not feel that Plaintiff was prepared to reintegrate into society. In addition, Plaintiff was unable to convince the Board members during her interview that "release on parole would be compatible with—or in the best interest of—society in general." (*Id* at 19). Factors informing the Board's decision included Plaintiff's need to complete "required DOC programs," her lack of positive institutional progress, her prior unsatisfactory supervision record, and negative official input. (*Id.*). The Board clarified that it considered all factors disclosed in her records; her progress in the DOC; her re-entry planning efforts; official reports from the DOC and treatment providers; court documents; input from the

community, victims, family members, and officials; and Plaintiff's interview. Thus, contrary to Plaintiff's assertion in the complaint, the Parole Board's decision was not based solely on her failure to complete programs, but was multifactorial.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Nevertheless, in certain limited circumstances, an inmate may raise a constitutional claim on the ground that his parole was denied due to false information contained in his inmate file. *Paine v. Baker*, 595 F.2d 197, 201 (4th Cir. 1979). To sustain such a claim, an inmate must first show that false information is, indeed, present in his file. *Id.* "It is not sufficient that the inmate allege that 'something must be wrong;' nor may he simply set out the true facts and demand assurances that the information in the file comports with those facts." *Id.* "Second, the inmate must affirmatively plead that the information in his file is false." *Id.* Lastly, the inmate must show that the information was relied upon "to a constitutionally significant degree." *Id.* To satisfy the third factor, the inmate must demonstrate that the information was used to decide a matter in which "the inmate's conditional liberty interest is at stake and the due process clause is called into play," and that the error is more significant than a technical mistake. *Id.* at 202 ("If the alleged error is a technical one which would not reasonably be a factor relied on in the decision-making process, then no claim for relief will lie. If the error is more significant, i. e., involving the inmate's past criminal record or his record of disciplinary offenses while in prison, then it may reasonably be relied on and fundamental fairness requires its expunction."). As a jurisdictional prerequisite, before filing a federal lawsuit based on such a claim, the inmate must request removal of the contested information from the file and allow the facility reasonable time to remove it. *Id.*

at 202-03.

In this case, Plaintiff offers no facts demonstrating that incorrect information existed in her file. She alleges that her file must have been incorrect because she was denied parole for failing to participate in and finish classes, although prior to the parole hearing, she completed yoga and exercise classes and regularly visited the law and reading libraries. (ECF No. 27 at 9). Plaintiff fails to appreciate, however, that the incomplete programs described by the Parole Board in its summary were "required DOC programs." (ECF No. 1-4 at 19). Plaintiff provides no information to substantiate that yoga and exercise classes were "required DOC programs." Further, as Plaintiff does not contend that she completed other programs, unless yoga and exercise classes were the only required programs offered by the DOC, the Parole Board's summary was based upon accurate information. The Parole Board also mentioned Plaintiff's lack of positive progress in the institution, which was based on a number of factors, including lack of participation in programs and activities. (*Id.*). Considering Plaintiff's representation that she was "wait listed" for a number of programs at Lakin, it is reasonable to conclude that the facility offered many different programs and activities. As such, the Parole Board may correctly have concluded that participating in only two classes and going to the library occasionally did not reflect "positive progress" by Plaintiff. In sum, Plaintiff has offered nothing more than speculation to support the claim that her inmate file contained inaccurate information. Bare assertions of wrongdoing founded on speculation simply do not state a plausible claim. Thus, the undersigned **FINDS** that Plaintiff fails to present a *prima facie* case against any defendant related to the denial of her parole.

### 7. Religious Discrimination

Plaintiff alleges that she was the victim of discrimination, because she wanted to

be a Muslim or attend demonic services. (ECF No. 27 at 13). A review of the documents produced by Plaintiff indicates that, on November 3, 2015, Petitioner filed an Inmate Request Form, seeking pamphlets and consultation "with someone about becoming Muslin, vegan, or satanic." (ECF No. 1-2 at 10). The facility's chaplain later provided her with a pamphlet about the Muslim faith, but indicated that he did not have information regarding the other two. (*Id.*). On November 5, 2015, Plaintiff completed a "Religious Special Diet Request and Authorization Form" asking for a vegan diet. (ECF No. 1-2 at 9). Plaintiff indicated that her new religion ("Satanic") required such a diet. (*Id.*). In response, the chaplain advised Plaintiff that before her request could be processed, she was required to complete a "Declaration of Religion Form." (*Id.*) Plaintiff does not provide documentation to substantiate that she completed this required paperwork.

In April 2016, Plaintiff requested four publications about Satanism, including the Satanic Bible and the Satanic Scriptures. (ECF No. 14 at 41). The chaplain responded that he did not have the materials she requested, but she could review the available information on the Reverse Bible. The chaplain also prepared a memorandum to Plaintiff, explaining that books promoting violence, manipulation, illegal behavior, and disregard for laws and authority were detrimental to the security, good order, and discipline of the facility and were prohibited by policy directive. (ECF No. 14 at 42). Accordingly, Plaintiff was told she could not order the Satanic Bible. However, as the chaplain was not familiar with the other publications, he gave Plaintiff permission to order them. The chaplain indicated that the publications would be reviewed for content upon arrival to the facility. If they were determined to contravene the policy directive, Plaintiff would have to dispose of them. (*Id.*).   Nothing in the record establishes that Plaintiff ever ordered the publications.

The Free Exercise Clause of the First Amendment to the United States Constitution guarantees inmates the right to free exercise of religion while incarcerated, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), and prohibits customs or policies that are designed to suppress religious beliefs and practices. *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). In addition, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden promotes a compelling governmental interest and is the least restrictive means of furthering that interest. To succeed on a claim of religious discrimination under either of these provisions, an inmate must make an initial showing that he sincerely holds a religious belief and that action by the defendants substantially burdens his religious freedom or expression. "In essence, the plaintiff's claims under the Free Exercise clause and the RLUIPA impose the same requirements: the plaintiff must allege facts showing that a particular action by a particular defendant 'substantially burdened his sincerely-held religious beliefs.'" *Blakely v. Wards,* 2011 WL 2559601, at *11 (D.S.C. May 20, 2011) (quoting *Ajaj v. Federal Bureau of Prisons,* 2011 WL 902440 (D.Colo. 2011)); *see also Wisconsin v. Yoder,* 406 U.S. 205 (1972); *Cutter v. Wilkinson,* 544 U.S. 709 (2005). The Supreme Court has defined "substantial burden" as "substantial pressure on an adherent to modify his behavior and to violate his beliefs, *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 718 (1981), or an action that compels a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion ... on the other hand," *Sherbert v. Verner,* 374 U.S. 398, 404 (1963). "No substantial burden occurs if the government action merely makes the 'religious exercise

more expensive or difficult' or inconvenient, but does not pressure the adherent to violate her religious beliefs or abandon one of the precepts of her religion." *Rountree v. Clarke*, No. 7:11CV00572, 2015 WL 1021286, at *7 (W.D. Va. Mar. 9, 2015) (quoting *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir.2007)).

Once again, Plaintiff's complaint lacks any factual recitation detailing how and when her right to exercise her religion was purportedly violated and by whom. Rather, she claims discrimination on the basis that Lakin would not allow her "to order the books for demonic prayer," yet allowed books discussing murder and killing to remain on the library shelves. The paperwork provided by Plaintiff undermines her claim of religious discrimination. Indeed, the grievance forms show that Plaintiff was given permission to order three of the four books she requested, and was allowed to participate in a program of pagan prayer. (ECF No. 14 at 15, 42).

More importantly, Plaintiff fails to make an initial showing that she sincerely held a religious belief and officials at Lakin took action that substantially burdened her ability to express her beliefs. At the time Plaintiff submitted the amended complaint, she continued to vacillate between a desire to be Muslin and a desire to be a Satanist. The facility's chaplain was responsive to her requests and provided her with the information he had available. While it is true that one publication requested by Plaintiff was prohibited based upon a Division of Corrections policy directive, Plaintiff makes no showing that the lack of that publication prevented her from exercising her religious beliefs. "[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious ... observance was more than an inconvenience to one's religious practice." *Baines v. Hicks*, No. 3:14CV616, 2016 WL 7380558, at *10 (E.D. Va. Dec. 20, 2016) (quoting *Smith*, 502 F.3d at 1278). She also

makes no claim or showing that the policy, itself, places an unconstitutional burden on the exercise of religion. See *Krieger v. Brown*, 496 Fed.Appx. 322, 325 (4th Cir. 2012)(finding that the plaintiff failed to make a *prima facie* case that a governmental entity substantially pressured him to modify his behavior and to violate his religious beliefs by refusing to provide him with an outdoor worship area and sacramental accessories.); *Sullivan v. Younce*, No. 3:15CV10, 2017 WL 655175, at *8 (E.D. Va. Feb. 16, 2017) (holding that removal of purported religious materials from inmate's cell was an inconvenience, not a substantial burden on his exercise of religion).

In relation to her religious discrimination claim, the only individual identified in the paperwork as communicating with Plaintiff regarding religion was the facility's chaplain. However, Plaintiff did not join the chaplain as a defendant and made no express accusations regarding his actions. Given the lack of factual allegations corroborating a claim of religious discrimination, the undersigned **FINDS** that Plaintiff fails to state a plausible claim based upon alleged religious discrimination. *Hamilton v. Lammi*, No. 16-CV-0276 (PJS/LIB), 2016 WL 7489042, at *2 (D. Minn. Dec. 30, 2016) (holding that to state a claim for a violation of religious freedom, the plaintiff must "identify *what* 'religious items' or 'religious literature' was requested, who made each request, to whom each request was made, or when each request was made. ... the complaint [must] identify who rejected each request, or to what extent, or when, or for what reason. And most importantly, the complaint [must] describe why the rejection of each request imposed a *substantial* burden on" the plaintiff's exercise of religious beliefs."). In any event, Plaintiff's claim under RLIUPA is moot in light of her transfer from Lakin. *See Wall v. Wade*, 741 F.3d 492, 496 n. 5 (4th Cir. 2014) ("We note at the forefront that Congress did not authorize damages claims against state officials under RLUIPA.")

### 8. **Remaining Condition of Confinement Claims**

Interspersed throughout her filings, Plaintiff raises a cornucopia of additional claims related to her conditions of confinement. As previously stated, the Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler,* 989 F.2d at 1381 (4th Cir. 1993). Therefore, not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). Significantly, the Eighth Amendment "does not mandate comfortable prisons ... only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson,* 501 U.S. at 298 (*quoting Rhodes,* 452 U.S. at 347). To successfully assert an Eighth Amendment claim, an inmate must also demonstrate that prison officials had a sufficiently culpable state of mind when imposing or ignoring the inmate's deprivations. *Iko,* 535 F.3d at 238. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing

*Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Id.* The undersigned will address the remaining claim, applying the two-pronged analysis set forth in *Iko* where appropriate.

### a. Single-celling

Plaintiff objects to having been "single-celled" at Lakin, which occurred after her roommate complained that Plaintiff was "hearing voices." (ECF No. 27 at 9, ECF No. 1-1 at 42). Plaintiff suggests that she did not need a single cell, and she was concerned about the impact being single-celled would have on her chances for parole. Looking at the first prong of the Eighth Amendment analysis, Plaintiff fails to explain how assignment to a single cell, without a roommate, constituted a severe deprivation. Actually, many inmates prefer a single cell for protection and privacy; most claims related to single-celling are based on the correctional facility's refusal to accommodate an inmate's request for a single cell. *See, e.g., Williams v. Bishop,* No. RWT–12–1616, 2014 WL 4662427, at *6 (D. Md. Sept. 17, 2014) ("A prisoner's strong desire to be in a single cell, based on his belief that his medical conditions cause difficulties with cellmates, does not entitle him to housing in a single cell unless medical providers have made a directive for a single cell based on a medical need."); *Goodman v. McBride*, No. CIV.A. 5:06-CV-00523, 2007 WL 1821090, at *3 (S.D. W. Va. June 22, 2007) ("Plaintiff has no constitutionally protected interest in a single bunk cell."); *Stout v. Hobbs*, No. 7:10CV00541, 2010 WL 5101114, at *1 (W.D. Va. Dec. 8, 2010) (finding no constitutional violation where inmate's request for a single cell was rejected); *and Murphy v. Warden*, No. CV DKC-15-2448, 2016 WL 5390826, at *4 (D. Md. Sept. 27, 2016) (finding that inmate failed to demonstrate that prison officials

acts with deliberate indifference to a serious medical need or to the excessive risk of harm when denying inmate's request for a single cell). In any event, regardless of whether an inmate wants a single cell or a double cell, "[i]nmates do not have a constitutionally recognized liberty interest in a particular security classification or a constitutional right to be confined in a particular prison." *Meachum v. Fano,* 427 U.S. 215, 224 (1976).

As to the second prong, Plaintiff fails to identify any particular defendant as being responsible for her single cell, and she asks for no specific relief related to this claim. As Plaintiff's claims for injunctive relief are moot, and she articulates no injury, she fails to state a *prima facie* claim based upon being placed in a single cell.

### b. Lost items and toiletries

Plaintiff asserts that when she was terminated from the Huntington Work Release program and returned to Lakin, the transport officers would not allow her to bring her toiletries and clothing and may have lost some of her legal papers. Nonetheless, Plaintiff makes no claim that she was forced to go without clothing or toiletries upon arrival at Lakin, or that the loss of the legal paperwork caused her any harm. While a "deprivation of toiletries, and especially toilet paper, can rise to the level of unconstitutional conditions of confinement," *Trammell v. Keane,* 338 F.3d 155, 165 (2d Cir.2003) [citations omitted], a denial of toiletries for a *temporary* period "must be accompanied by other deprivations to rise to the level of an Eighth Amendment violation." *Cusamano v. Sobek*, 604 F. Supp.2d 416, 488 (N.D.N.Y. 2009). Plaintiff does not describe a specific injury or other deprivation related to the transport officers' refusal to allow her to bring her belongings at the time of transfer.

To the extent Plaintiff seeks to raise a due process claim, negligent acts of the transport officers that resulted in a loss of Plaintiff's property do not amount to a

constitutional deprivation. *Daniels v. Williams*, 474 U.S. 327, 328 (1986), ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."); *Nwaokocha v. Sadowski*, 369 F. Supp.2d 362, 370 (E.D.N.Y. 2005) (holding that "negligently misplacing an inmate's property does not establish a denial of due process.). Similarly, intentional acts causing the loss or destruction of property do not violate an inmate's due process rights when meaningful postdeprivation procedures are in place. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *and Parratt v. Taylor,* 451 U.S. 527, 541–44 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 330–31 (1986). The ability to file state court claims for conversion and the availability of inmate grievance processes have been held to constitute meaningful postdeprivation remedies. *See Kidd v. Bradley*, 578 F. Supp. 275, 276–77 (N.D. W. Va. 1984) ("Under the common law of West Virginia, '[t]he tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is ... a conversion of the property for which ... [a cause of action] will lie.' The common law likewise recognizes a cause of action for the negligent deprivation of, or injury to, one's personal property rights. Inasmuch as these common law actions provide the Plaintiff at bar with an adequate post-deprivation remedy, the Court finds that the Plaintiff has not stated a cause of action under Section 1983.") (citations omitted); *Goodman v. Ramey*, No. CIV.A. 2:12-0439, 2012 WL 5966642, at *4 (S.D. W. Va. Nov. 29, 2012) (holding that an inmate failed to state a constitutional claim for the loss of his property when he could have challenged the taking

"in a garden-variety tort claim in state court."); *Whitehead v. Beard*, No. CIV.A. 04-CV-1853, 2006 WL 891053, at *8 (E.D. Pa. Mar. 30, 2006) ("The Third Circuit has held that the DOC's prison grievance procedure provides an adequate post-deprivation of property remedy."); *and Cooper v. Wright*, No. 7:15CV00572, 2016 WL 7165994, at *4 (W.D. Va. Dec. 6, 2016) (holding that prisoner failed to demonstrate that postdeprivation remedies were not available when grievance procedures addressed the issue).

Plaintiff does not argue the absence of meaningful postdeprivation procedures to address the alleged acts of the transport officers in prohibiting her from taking her personal belongings during transfer. Consequently, Plaintiff has failed to state a plausible constitutional claim based upon the loss of her toiletries and legal records.

### c. PREA calls

Next, Plaintiff contends that she called the PREA ("Prison Rape Elimination Act") telephone number two times upon returning to Lakin from work release. (ECF No. 27 at 10). According to Plaintiff, she received no response. Plaintiff never explains her reason for calling the number; although, it appears that she may have tried the number just to see if it worked, (ECF No. 1-2 at 7), or to report correctional staff misconduct not related to sexual abuse or assault. (ECF No. 1-3 at 6-8). Plaintiff states that "when calling a number like this it should go to an outside agency not the prison." (*Id.*). She allegedly brought her difficulties to the attention of Mr. Stump, a unit director, but he provided no useful assistance. Other personnel at Lakin, Mrs. Roush and Mrs. Ray, were equally ineffectual in correcting the problem and actually removed the PREA number used for reporting incidents involving staff.

Plaintiff's allegations do not describe any particular act that violated her constitutional rights. Plaintiff was not at risk for physical or sexual abuse when she made

the calls, and she makes no allegation of sexual abuse or assault while at Lakin. Accordingly, Plaintiff cannot demonstrate that Mr. Stump, Mrs. Ray, or Mrs. Roush deliberately disregarded an excessive risk of harm to Plaintiff by failing to connect her with the PREA hotline. Moreover, the PREA, itself, contains no private right of action that could support a § 1983 complaint. *Law v. Whitson,* No. 2:08–cv–0291, 2009 WL 5029564, at *4 (E.D. Cal. Dec. 15, 2009) ("[T]he Prison Rape Elimination Act was enacted to study the problem of prison rape. Nothing in the Act suggests that it created a private right of action, enforceable under section 1983. The Act in itself contains no private right of action, nor does it create a right enforceable under Section 1983.") (internal citations omitted)); *Chinnici v. Edwards,* No. 1:07–cv–229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008) ("The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights."); *and Wedmore v. Jorgenson*, No. 1:14-CV-149, 2015 WL 5793615, at *8 (D.N.D. Oct. 2, 2015) (citing *McCloud v. Prack,* 55 F.Supp.3d 478, 483 n.2 (W.D.N.Y. 2014) (finding that every court to address the application of PREA had concluded that it does not support a private right of action by an inmate). Thus, an ineffective PREA process, standing alone, does not constitute a violation of any constitutional right. *Rineholtz. v. Campbell* 64 F.Supp.2d 721, 731 (W.D. Tenn. 1999) ("In a § 1983 action, a federal court considers whether a *constitutional* right has been infringed, not whether bureaucratic procedures have been violated."). Accordingly, Plaintiff fails to state a cognizable claim related to the PREA number.

### d. Medical lockdown

Plaintiff next complains about being placed in medical lockdown by facility psychiatrist, Dr. Brycon, after other inmates reported that Plaintiff was acting strangely

and talking to herself. (ECF No. 1-3 at 7, 11; ECF No. 27 at 10-11). Plaintiff expresses no specific complaint related to the lockdown, other than general displeasure with having been there. Plaintiff does allege that her rights under the Health Insurance Portability and Accountability Act ("HIPAA") were violated when she was forced to have teleconferenced psychological counseling sessions in the presence of guards and when she was required to stand in a pill line to receive her psychotropic medications. HIPAA's privacy provisions prohibit the disclosure of an individual's protected health information without the individual's consent, unless an exception applies to the disclosure. 42 U.S.C. § 1320d-6. However, like the PREA, Congress did not include a private cause of action for a breach under HIPAA. *See Williams v. Jones*, No. 9:07-CV-3437-MBS-GCK, 2008 WL 948285, *5 (D.S.C. April 4, 2008). Consequently, Plaintiff cannot maintain a § 1983 claim based on a HIPAA violation. *Standiford v. Rodriguez-Hernandez*, No. 5:10CV24, 2010 WL 3670721, at *4 (N.D. W. Va. Sept. 20, 2015) ("Because HIPAA does not provide for a private right of action, however, the plaintiff has not stated a cognizable claim."). Therefore, this claim lacks merit.

### e. Grievance procedure

Plaintiff argues that the grievance procedure at Lakin was inefficient and ineffective. (ECF No. 27 at 11-12). She claims that the warden was merely a rubber stamp for the unit manager, and the commissioner agreed with whatever the warden recommended in response to a grievance. Plaintiff states that the only way to have issues taken seriously at Lakin was to file a civil action.

Even if Plaintiff's assessment of Lakin's grievance procedure is accurate, her claim cannot survive initial review. Claims based upon the ineffectiveness of a prison grievance procedure are not cognizable under § 1983, because "there is no inherent constitutional

right to an effective prison grievance system." *Blye v. Ozmint*, No. CIV.A 208CV03636MBS, 2010 WL 438176, at *3 (D.S.C. Feb. 5, 2010) (citations omitted); *Adams*, 40 F.3d at 75 ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") *Jasmaine v. Futrelle*, No. 5:15-CT-3294-FL, 2017 WL 829290, at *2 (E.D.N.C. Mar. 2, 2017) (holding that a 1983 claim based upon an ineffective grievance procedure must be dismissed, because "even if available, a prison grievance procedure does not confer any substantive right upon inmates.") (citing *Adams*, 40 F.3d at 75). Accordingly, this claim also lacks merit.

### f. Mailroom issues

Plaintiff asserts a variety of problems with Lakin's mailroom procedures, including variations in the charges associated with mailing packages that appear to be the same weight; refusal of the mailroom employees to provide a timely receipt; possible tampering with mail received from courts; employees redacting sections of correspondence from Plaintiff's grandmother; and employees losing at least one letter sent from her family. (ECF No. 1-1 at 9-10; ECF No. 27 at 12-13). Plaintiff does not identify a particular person responsible for the alleged violations, nor does she articulate any injury she suffered secondary to the occasional mailroom failures. Indeed, some of her allegations have no factual underpinning at all. Plaintiff only speculates that her legal mail was opened, conceding that the suspicious clear tape on the envelope flaps may have been placed there by the courts. (ECF No. 1-1 at 10). Likewise, Plaintiff provides no facts supporting her contention that the mailroom employees intentionally charged different amounts to mail packages that weighed the same, or that they removed documents from some of the mailings prior to placing postage on the package. She provided copies of two certified mail receipts, sending documents to different addresses, which showed a 21-cent difference in

40

postage. (ECF No. 30 at 6). She claims that one of the packages was missing a copy of the court docket. (*Id.*). However, this information does not lead to any particular conclusion, as there is more than one factual scenario that could explain the discrepancy. Thus, Plaintiff's belief that the difference reflects wrongdoing by the mailroom staff is based on nothing more than supposition.

Prison inmates have a First Amendment right to send and receive mail. *Thornburgh v. Abbott,* 490 U.S. 401, 407–08 (1989). However, that right is not unfettered. *See, e.g., Altizer v. Deeds*, 191 F.3d 540, 547-48 (4th Cir. 1999) (holding that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional...."). In order to state a claim based upon prison mailroom procedures, an inmate must generally show that the procedures resulted in actual harm or prejudice to his ability to communicate with a court or counsel. *See Scott v. Bristol City Jail*, No. 7:10CV00379, 2010 WL 4449555, at *1 (W.D. Va. Oct. 29, 2010) (citing *Lewis,* 518 U.S. at 351). Plaintiff makes no such allegation and provides no evidence that could support such a claim. Moreover, isolated or inadvertent incidents of lost mail, mail tampering, or the mishandling of mail are not actionable under § 1983. *See Scott,* 2010 WL 4449555, at *1; *and Pearson v. Simms,* 345 F.Supp.2d 515, 519 (D.Md.2003) (aff'd, 88 F. App'x. 639 (4th Cir. 2004)) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983); *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) *Averhart v. Shuler,* 652 F.Supp. 1504 (N.D.Ind.), *aff'd,* 834 F.2d 173 (7th Cir. 1987) (holding that the negligent opening of an inmate's mail did not give rise to a constitutional violation). Accordingly, Plaintiff fails to state a plausible claim that the mailroom procedures at Lakin violated her First Amendment rights.

### g. Disagreement regarding medical care and kosher meal

Finally, Plaintiff vaguely complains about the psychotropic medications prescribed by Dr. Brycon, indicating that he told her she would have to take the medications if she wanted to receive parole, ignoring her preference to stop the medications. (ECF No. 1 at 4; ECF No. 1-3 at 8-9). Even if true, these allegations are insufficient to state a claim. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)). In order to succeed under § 1983, a plaintiff must allege sufficient facts to show a constitutional violation.

Plaintiff also indicated that on one occasion, she received a kosher meal that no one else would eat. (ECF No. 27 at 13). For that reason, Plaintiff speculates: "I think that they did something to my food." (*Id.*). Clearly, such a bare assertion is wholly inadequate to support a cause of action under § 1983.

Therefore, having considered all of the remaining claims asserted by Plaintiff, the undersigned **FINDS** that Plaintiff fails to provide a sufficient factual basis to support a *prima facie* case under § 1983.

## VI.  Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the proposed findings and **RECOMMENDS** that Plaintiff's Amended Complaint, (ECF No. 27) be **DISMISSED, with prejudice;** her Motion to Amend, (ECF No. 34), be **DENIED**, as moot; and this civil action be removed from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States

District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three additional days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding district judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff.

**FILED:** March 16, 2017

Cheryl A. Eifert
United States Magistrate Judge